|1BYRNES, Judge.
The Louisiana State Board of Medical Examiners (“Medical Board”) appeals the trial court’s March 16, 1994 judgment finding that Dr. Raul R. Diaz was exonerated from any wrongdoing. We reverse.
On March 31, 1988, Dr. Raul Diaz[1] was requested by Dr. Paul Verret, an internist, to see an elderly patient, M.F., in the Emergency Room of Chalmette Medical Center.[2] In his consult note, Dr. Diaz noted a hip fracture on the right side and considered doing a bone graft. Dr. Diaz was offered assistance from one of his associates, Dr. Milton Rosen-krantz.
The consent form provided for a procedure on the left hip. No mention was made in the consent form of a possible bone graft. Dr. Rosenkrantz was advised by Dr. Saunee,[3] the *825 anesthesiologist, that the hip fracture was on the right according to the x-ray films. Dr. Rosenkrantz proceeded with the incision 12on the left hip. Dr. Rosenkrantz proceeded with the operation prior to Dr. Diaz’s arrival. Dr. Rosenkrantz exposed the intratroehanter area. No fracture was observed.
Sometime after Dr. Rosenkrantz had made the incision on the left, Dr. Diaz entered the operating room. Dr. Rosenkrantz indicated that he was having trouble locating the fracture. Dr. Diaz took the C-arm (a fluoroscope), and looked at the right and left hips. Dr. Diaz indicated that the fracture was on the right and requested that the left incision be left open. Dr. Diaz decided to take the bone grafting material from the left greater trochanter area which was already exposed.
Dr. Diaz proceeded with an incision on the right assisted by Dr. Rosenkrantz. Dr. Diaz used graft material from the left greater trochanter as well as some graft material from the bone bank. The fracture was repaired and grafted. The patient had an uneventful recovery.
Because the consent form was filled out incorrectly by Dr. Rosenkrantz and/or the nursing staff, an incident report was filed with the hospital by the nursing staff. Approximately one month after the surgery, the Chalmette Medical Center investigated the matter at a meeting of the Surgery Committee. Both Dr. Rosenkrantz and Dr. Diaz testified before the Hospital Surgery Committee. Dr. Diaz testified that the greater trochanter is an acceptable area for taking bone grafting material. Dr. Rosenkrantz testified that it was his intent at all times to use the greater trochanter for bone grafting material. The Surgery Committee concluded that there was no negligence or wrongdoing.
|3The Louisiana State Board of Medical Examiners held a hearing on the following charges against Dr. Diaz:
1. Preparation by Dr. Diaz of a misleading operative report to cover up a surgical error, in violation of R.S. 37:1285(a)(10), which prohibits “efforts to deceive or defraud the public.”
2. Submission by Dr. Diaz to Medicare of claims for non-indicated surgical procedures, in violation of R.S. 37:1285(a)(ll), which prohibits “making or submitting false, deceptive, or unfounded claims ...”
3. Performance by Dr. Diaz of non-indicated and potentially disabling surgical procedure in order to cover up a surgical error, in violation of R.S. 37:1285(a)(12), which prohibits professional and medical incompetency.
4. Deceptive conduct, performance of a non-indicated surgical procedure and submission of fraudulent Medicare claims by Dr. Diaz, which constitutes unprofessional conduct on the part of Dr. Diaz, in violation of R.S. 37:1285(a)(13).
The Medical Board found “... that Dr. Diaz is not guilty of the first three charges against him.” However, the Board found “... that Dr. Diaz engaged in deceptive practices when he failed to reveal the circumstances surrounding the erroneous incision in the left hip, and failed to delineate fully those circumstances in his operative report.” The Medical Board reprimanded Dr. Diaz and ordered him to pay a fine of $3,000 and all costs of the proceedings.
When Dr. Diaz appealed the Medical Board’s decision in civil district court, the trial court reversed the finding of the Medical Board and exonerated Dr. Diaz from any wrongdoing on March 16, 1994. The Medical Board’s appeal followed.
The Medical Board contends that the trial court improperly superimposed its own findings and credibility determinations in place of those |4of the Board, beyond the permissible bounds of judicial review under the Louisiana Administrative Procedure Act. Dr. Diaz argues that the Medical Board’s findings were not supported by substantial or sufficient evidence. Dr. Diaz asserts that the Medical Board’s finding that he was guilty of deceptive conduct because he failed to delineate fully those circumstances in his operative report in Charge No. 4 was arbitrary and capricious because it was inconsistent with Charge No. 1, based on a finding that Dr. Diaz was not guilty of preparing a misleading operative report.
In Williams v. Louisiana Tax Commission, 611 So.2d 724 (La.App. 4th Cir.1992), *826 this court stated that the reviewing court must determine whether “the administrative body had a rational basis for discretionary determinations and whether these determinations were supported by substantial evidence.” A review of the record shows that the Board had sufficient evidence to support its determination.
Dr. Diaz gave the following testimony to the Medical Board concerning what he told the family after the operation:
Yes, I did, I walked out and I told them we made an incision over the left trochanteric region, transferred it over to the right because the fracture was so severe that we needed bone grafting. I didn’t come out and say I suspected Dr. Rosenkrantz screwed up and took it from the wrong side.
The Board did not find Dr. Diaz guilty of being an incompetent doctor because of the surgical error, but found him guilty of unprofessional conduct for his actions subsequent to the surgery in making sure that the surgical errors were not disclosed to the patient and her family. The trial court missed the point |5of this case. The Reasons for Judgment focus on the surgical error, not on Dr. Diaz’s unprofessional conduct.
La.R.S. 49:964(G) provides a list of situations in which the district court may reverse or modify an administrative decision. Pertinent to this discussion are the following:
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
There is no factual dispute which would make the manifest error rule applicable to this case. The statement attributed to Dr. Diaz convicts him of failing to reveal the circumstances surrounding the erroneous incision. The only question remaining for the district court was whether the decision of the Board in the light of these uncontradicted facts was arbitrary, capricious, or characterized by an abuse of discretion.
In Montalbano v. Board of Medical Examiners, 560 So.2d 1009 (La.App. 4th Cir.1990), this court recognized that the scope of judicial review of actions taken by an administrative agency is limited to a determination of whether the decision was unreasonable, arbitrary or capricious or amounted to an abuse of discretion. The court stated further that reviewing courts “must be cognizant of the strong presumption of validity and propriety in such administrative actions where casting judgment upon the professional behavior of a fellow lemember of a profession is a matter peculiarly within the expertise of an agency composed of members of that profession.” Montalbano, Id. at 1011.
Since there was no basis for the trial court to find that the Medical Board abused its discretion, there is no legal basis for the court to reverse the Board’s decision.
Accordingly, the judgment of the trial court is reversed, and the Medical Board’s decision is reinstated.

REVERSED.

. Dr. Diaz filed his appeal with the District Court under the name "John Doe, M.D."

. The name of the patient is being excluded to protect her identity.

. Dr. Saunee has since died.